UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRAD A. MART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 12 C 2496 |
| GOZDECKI, DEL GIUDICE, ) | |
| AMERICUS & FARKAS LLP, ) | Judge John W. Darrah |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Brad Mart alleges that his former attorney, Gozdecki, Del Giudice, Americus & Farkas LLP ("GDAF") committed legal malpractice because GDAF did not timely file a retaliatory discharge claim pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") against his former employer, Forest River, Inc. ("Forest River"), and its parent company, Berkshire-Hathaway, Inc. ("Berkshire"). GDAF moves to dismiss, arguing that Mart could not have prevailed on his SOX claim because he was an employee of Forest River, a private company, and not Berkshire and therefore not a covered employee under SOX.

## BACKGROUND

The following facts are taken from Mart's Amended Complaint ("Am. Compl.") and are accepted as true for purposes of resolving this Motion to Dismiss. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). In addition, the court takes judicial notice of the underlying complaint Mart filed against Forest River and Berkshire in the Northern District of Indiana, *Mart v. Berkshire Hathaway, Inc. et al*, No. 3:10-118 (N.D. Ind.) ("Ind. Am. Compl."). *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (holding that court may take judicial notice of documents

in the public domain).

Mart began working for Forest River in 2006. (Ind. Am. Compl. ¶ 1.) At the time, Forest River was a wholly-owned subsidiary of Berkshire. (*Id.* ¶ 22.) In October 2007, Forest River named Mart the successor to Peter Liegl, then Chief Executive Officer of Forest River, who was scheduled to retire on December 31, 2008. (*Id.* ¶ 1.) Shortly before Liegl's retirement, Mart uncovered conduct by Liegl that violated the Ethical Standards of the Berkshire Hathaway Code of Business Conduct and Ethics ("the Code"). (*Id.* ¶ 2; Am. Compl. ¶ 9.) Mart reported the conduct directly both to Warren Buffet and to Liegl. (*Id.*) Later, Mart uncovered additional violations of the Code by Liegl. Mart believed that Liegl had siphoned money from Berkshire and potentially violated the Racketeering and Corrupt Business Organizations Act ("RICO"). (Ind. Am. Compl. ¶ 3.) Mart reported these violations as well. (*Id.*) Liegl responded to Mart's allegations by threatening his life and defaming his character. (*Id.* ¶ 4.)

On November 3, 2008, Mart had a discussion with Jeff Rowe, Forest River's Director of Human Resources. (Am. Compl. ¶ 17.) In that discussion, Rowe informed Mart that Forest River would discharge him. (Am. Compl. ¶ 17.) On November 19, 2008, Forest River provided Mart with a letter summarizing his conversation with Rowe and informing Mart that Forest River was terminating him. (Ind. Am. Compl. ¶ 6; Am. Compl. ¶¶ 13, 17.) Mart received an additional letter from Forest River on January 8, 2009, notifying him of the termination, effective January 1, 2009. (Ind. Am. Compl. ¶ 7.)

In December 2008, Mart retained GDAF to prosecute claims relating to his

2

employment at Forest River. (Am. Compl. ¶ 6.) On February 17, 2009, GDAF filed a complaint on Mart's behalf with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA"). (Ind. Am. Compl. ¶ 73.) On August 19, 2009, GDAF notified OSHA that Mart intended to file suit in federal court. (*Id.*; Am. Compl. ¶ 16.) On April 5, 2010, Mart, represented by new counsel, filed suit against Berkshire, Forest River, and Liegl in the United States District Court for the Northern District of Indiana. (Ind. Am. Compl.) Among other claims, Mart alleged that Berkshire and Forest River violated the whistleblower provisions of SOX by terminating him in retaliation for his decision to report Liegl's unethical activities. (Ind. Am. Compl., Count II.)

SOX required Mart to file his claim with OSHA within ninety days after the date on which the violation occurs. (Am. Compl. ¶ 16.) Although GDAF filed the OSHA complaint on February 17, 2009, which was ninety days after Mart received the November 19, 2008 notice of termination, the Northern District of Indiana held that Mart had received unequivocal notice of his termination on November 3, 2008, when Rowe first informed him that Forest River was terminating him and not on November 19, 2008, when Mart received Forest River's letter confirming his termination. (*Id.* ¶ 17.) Consequently, the Northern District of Indiana held that Mart's SOX claims against Forest River and Berkshire were untimely. (*Id.*) Mart alleges that GDAF committed legal malpractice because it failed to consider that the statute of limitations on Mart's SOX claims would begin to run on November 4, 2008 rather than November 19, 2008. (*Id.* 21.)

3

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under Rule 12(b)(6), the defendant may seek to dismiss the case if the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). Although Federal Rule of Civil Procedure 8(a) requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (*Twombly*); *see Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (noting that while Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, to survive a motion to dismiss, "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)).

## ANALYSIS

To state a claim for legal malpractice under Illinois law, a plaintiff must allege: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause of an injury; and (4) actual damages. *Snyder v. Heidelberger*, 953 N.E.2d 415, 424 (Ill. 2011). In order to demonstrate that a defendant's negligent act proximately caused an injury, a plaintiff must thus allege facts sufficient to demonstrate that but for the negligence of the defendant, he would not have suffered a claimed loss. *Mauer v. Rubin*, 926 N.E.2d 947, 961 (Ill. App. Ct. 2010) (*Mauer*). In a legal malpractice claim involving failed litigation, a plaintiff must essentially allege a "case within a case," alleging facts sufficient to demonstrate that he would have been successful in the underlying suit were it not for the defendant's negligence. *Id.* (collecting cases). Where plaintiff fails to allege facts that would establish success in the underlying suit, he has failed to plead a cause of action, even where defendant's negligence is not contested. *Id.* GDAF argues that Mart's legal malpractice claim fails because his allegations demonstrate that the underlying SOX claims are without merit.

In the underlying complaint, Mart claimed that Forest River and Berkshire violated section 806 of SOX when they retaliated against him for reporting Liegl's misconduct. Section 806 provides whistleblower protection for "employees of publicly traded companies." 18 U.S.C. § 1514A(a). It provides that

> "[n]o company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)), or any officer, employee, contractor, subcontractor, or

5

> agent of such company . . ., may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee."

18 U.S.C. § 1514A(a).

In 2010, however, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"). Pub. L. No. 111-203 (July 21, 2010) (§ 929A). Section 929A of Dodd-Frank amends section 806 of SOX by extending the whistleblower provisions to employees of privately held subsidiaries of publicly traded companies. *Id.*

GDAF argues that Mart's underlying SOX claims would have failed, and that, therefore, he cannot demonstrate that he has been damaged by its alleged negligence, a necessary element to his legal malpractice claim. GDAF argues that under the pre-Dodd-Frank version of SOX, Mart was not a covered employee because he was employed by Forest River, a privately held subsidiary not subject to section 806. GDAF further argues that Dodd-Frank does not save Mart's underlying SOX claims because his claims arose before Dodd-Frank became effective and Congress did not make Dodd-Frank retroactive. In response, Mart argues that GDAF should be equitably estopped from arguing that his SOX claims were without merit because he relied on its advice to his detriment in originally pursuing those claims. In addition, Mart argues that section 806 of SOX protected employees at subsidiaries even before Dodd-Frank amended SOX. Alternatively, Mart argues that Dodd-Frank merely clarifies section 806 of SOX and that therefore typical principles of anti-retroactivity do not apply.

6

*Estoppel*

Mart argues that GDAF should be estopped from arguing that he did not have a valid section 806 SOX claim. Mart argues that GDAF submitted his SOX claim to OSHA, failed to advise him of its legal weakness, while he incurred legal fees for its effort in pursuing the claim. Mart reasons, therefore, that GDAF should now be estopped from arguing that all the while the SOX claim was without merit. Illinois courts have consistently rejected arguments by plaintiffs in legal malpractice claims who argue that their former attorneys should be estopped from arguing that the underlying claim lacks merit. *Orzel v. Szewczyk*, 908 N.E.2d 569, 573-74 (Ill. App. Ct. 2009); *Ignarski v. Norbut*, 648 N.E.2d 285, 292 (Ill. App. Ct. 1995); *Dunavan v. Calandrino*, 522 N.E.2d 347, 352 (Ill. App. Ct. 1988). Mart's estoppel argument is without merit.

*Section 806 of SOX*

The Court first turns to the question of whether section 806 of SOX protected employees of privately held subsidiaries prior to the enactment of Dodd-Frank, which requires the Court to examine whether section 806 is ambiguous. The starting point for any question of statutory interpretation is the plain language of the statute itself. *Kovacs v. United States*, 614 F.3d 666, 673 (7th Cir. 2010) (*Kovacs*). Where the statute's language is unambiguous, the sole function of the courts is to enforce it according to its terms. *Id.* Here, the language of SOX is clear. Section 806 clearly restricts its protections to employees of public companies, and not private companies. 18 U.S.C. § 1514A(a) (applying to employees of companies "with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), or that is

7

required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d))"). Federal courts have consistently concluded that the plain language of pre-Dodd-Frank SOX protected employees of publicly traded companies and not employees of those companies' privately held subsidiaries. *See, e.g.*, *Lawson v. FMR LLC*, 670 F.3d 61, 68 (1st Cir. 2012) (*Lawson*); *Hein v. AT&T Operations, Inc.*, 2010 WL 5313526, at **4-5 (D. Colo. 2010) (*Hein*); *Malin v. Siemens Medical Solutions Health Services*, 638 F. Supp. 2d 492, 501 (D. Md. 2008) (*Malin*); *Rao v. Daimler Chrysler Corp.*, 2007 WL 1424220, at **4-5 (E.D. Mich. 2007) (*Rao*); *Brady v. Calyon Sec. (USA) Inc.*, 406 F. Supp. 2d 307, 318-19 (S.D.N.Y. 2005) (*Brady*). In addition, these courts recognize that numerous administrative decisions of the Department of Labor have held that employees of privately held subsidiaries are not covered by section 806. *Hein*, 2010 WL 5313526, at *4 (collecting cases); *Malin*, 638 F. Supp. 2d at 501 (collecting cases); *Rao*, 2007 WL 1424220 (collecting cases).

Although section 806 prohibits agents of public companies from retaliating against whistleblowers, this language does not extend SOX's protection to whistleblowers who are employed by privately held subsidiaries of publicly traded companies. Instead, the Seventh Circuit has observed that the "idea behind" the provision listing contractors, subcontractors and agents "is that a covered firm, such as IBM, can't retaliate against whistleblowers by contracting with an ax-wielding specialist." *Fleszar v. U.S. Dep't of Labor*, 598 F.3d 912, 915 (7th Cir. 2010), *cert.*

8

*denied*, --- U.S. ---, 131 S.Ct. 423 (2010).[1]

Even if the court considers the statutory text ambiguous, other tools of statutory construction suggest that section 806 does not protect employees of privately held subsidiaries. The Supreme Court directs courts to consider the title and caption of statutes when interpreting some ambiguous word or phrase. *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 529, 67 S.Ct. 1387 (1947). As the court in *Lawson* observed, both the title of section 806 and the caption of the first line of text in the statute where section 806 is housed shed light on the meaning of the term "employee." *Lawson*, 670 F.3d at 69. Section 806 is entitled "[p]rotection for employees of publicly traded companies who provide evidence of fraud." 18 U.S.C. § 1514A(a); Pub. L. No. 107-204 (Jul. 30 2002) (§ 806). In addition, the caption of the statute's text contains similar language, reading "[w]histleblower protection for employees of publicly traded

---

[1] Although Mart argues that he alleged that Forest River was an agent of Berkshire in the underlying complaint, the allegations of the underlying complaint make clear that Liegl was the driving force behind both his hire and his termination and that Berkshire did not have the authority to affect the terms and conditions of his employment. (Ind. Am. Compl. ¶¶ 9, 26, 29, 46, 47, 51, 58, 62 (describing Forest River's negotiations with Mart, Liegl's anger at Mart's allegations of misconduct, Liegl's decision to demote and terminate Mart, Forest River's human resources manager's support of Liegl's decision, and Berkshire's decision to remain silent.) In this sense, Mart's underlying claim is distinguishable from one where a parent company "participated in the unlawful activity or exercised day-to-day 'control over the employee's conduct and the incidents of his employment.'" *Brady*, 406 F. Supp. 2d at 319 (discussing when an employee may bring a claim against a parent company despite not being employed by that company). The fact that Forest River had to follow Berkshire's Code or that Mart complained directly to Buffet are not sufficient to demonstrate that Forest River acted as Berkshire's agent in terminating Mart. *See Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 771 (7th Cir. 2007) (holding that merely because a parent company promulgates regulations for its subsidiaries to follow does not make it liable for their acts and that employees' complaints to a parent company does not make the parent the "employer") (*Bright*).

companies." 18 U.S.C. § 1514A(a). Congress's decision to label the statute sheds light on its intent that section 806 apply only to employees of publicly traded companies.

Further, in other sections of SOX, Congress enacted broader whistleblower provisions. Where Congress includes particular language in one part of a statute, but omits it in another, it is generally presumed that it has acted intentionally. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452, 122 S.Ct. 941 (2002). In several parts of SOX, Congress makes clear its intent to regulate privately held subsidiaries of publicly traded companies. *See Lawson*, 670 F.3d at 71-72 (describing numerous parts of SOX that explicitly regulate private entities). Section 806, however, is silent with regard to regulation of privately held subsidiaries. In addition, section 1107 of SOX, which also protects whistleblowers, criminalizes retaliation against "*any person*, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense . . . ." 18 U.S.C. § 1513 (emphasis added). The court presumes that Congress is aware of the well-settled principle that parent corporations are not liable for the wrongs of their subsidiaries unless they are directly liable because they cause the wrongful conduct or there is reason to pierce the corporate veil. *See Bright*, 510 F.3d at 771 (discussing liability of parent corporations). In this case, Congress extended SOX's regulations to privately held subsidiaries in some parts of the act, but not in section 806. This decision evidences an intent to limit section 806's applicability to privately held subsidiaries.

Mart argues "[c]ourts must uphold the [Department of Labor]'s interpretation of SOX as long as it is a 'permissible construction of the statute.'" (Resp. at 6.) (quoting

10

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 & n.11 (1984) (*Chevron*)). Despite the plain language of section 806, the Department of Labor had implemented regulations, defining an employee as "an individual presently or formerly working for a company or company representative . . . or an individual whose employment could be affected by a company or company representative." 29 C.F.R. § 1980.101. At least one federal district court has relied on the regulatory definition of "employee" to hold that some employees of privately held subsidiaries of publicly traded companies are protected by section 806. *Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d 1365, 1374 n.7 (N.D. Ga. 2004) (*Collins*). In *Collins*, the court noted that the plaintiff was within the regulatory definition of employee because the parent company could affect her employment. *Collins*, 334 F.Supp.2d at 1374 n.7. Another federal district court has reached a similar conclusion without explaining its reasoning. *Ciavarra v. BMC Software*, 2008 WL 352273, at *3 (S.D. Tex. 2008) *(Ciavarra)*. Finally, an administrative decision has reasoned that employees of privately held subsidiaries are covered "employees" within the scope of section 806 because SOX is a remedial statute subject to broad interpretation and Congress "insisted upon accuracy and integrity in financial reporting at all levels of the corporate structure, including the non-publicly traded subsidiaries." *See Morefield v. Exelon Services, Inc.*, 2004-SOX-00002 (A.L.J. Jan. 24, 2004) (*Morefield*). Mart points to these decisions to argue that the Court should defer to the Department of Labor's regulatory scheme pursuant to *Chevron*.

    Mart's argument is not convincing. First, as the Court noted previously, the statutory text is clear. Under *Chevron*, however, a court first asks whether the statute is

11

silent or ambiguous with respect to the specific issue before it. *Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 465 (7th Cir. 2012) (*Emergency Servs. Billing Corp.*); *see also Lawson*, 670 F.3d at 81 (declining to defer to agency regulations because the text of the statute is not ambiguous). If it is not, then no deference is appropriate. *Emergency Servs. Billing Corp.*, 688 F.3d at 465. As the court in *Rao* observed, "the fact remains that Congress only listed employees of public companies as protected individuals under § 1514A, and it is not the job of this Court to rewrite clear statutory text." *Rao*, 2007 WL 1424220, at *4; *see also Lawson*, 670 F.3d at 83 (declining to give the term "employee" a broader reading to effectuate the remedial purpose of the statute and holding that court is bound by what Congress has written). In any event, the regulations *themselves* state that they are "procedural in nature and not intended to provide interpretations of the Act" and thus not entitled to deference. 69 Fed. Reg. 52,104, 52,105 (Aug. 24, 2004).

The court holds that the pre-Dodd-Frank version of section 806 of SOX is not ambiguous. Under the plain language of section 806, only employees of publicly traded companies are protected individuals.

*Dodd-Frank and Retroactivity*

The Court turns next to the question of whether Dodd-Frank should apply retroactively. If Dodd-Frank substantively altered SOX, then the anti-retroactivity principle set forth in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483 (1994) (*Landgraf*), governs, and the extension of SOX by Dodd-Frank cannot save Mart's underlying SOX claim, which arose prior to Dodd-Frank's effective date. On the other

12

hand, if the statute merely clarified SOX, then concerns about retroactive application are not implicated at all, and the Indiana court would have been free to evaluate Mart's SOX claim according to the terms set forth in Dodd-Frank. *See Middleton v. City of Chi.* 578 F.3d 655, 664 (7th Cir. 2009) (observing that traditional concerns about retroactivity are not present when an amendment clarifies previously ambiguous statutory text) (*Middleton*).

There is no dispositive test to determine whether an amendment clarifies, rather than alters, an existing law. Rather, when a court must determine if an amendment clarifies or alters an existing law, courts examine: (1) whether the enacting body declared the amendment was clarifying a prior enactment; (2) whether a conflict or ambiguity existed prior to the amendment; and (3) whether an amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history. *Middleton*, 578 F.3d at 663-64.

Several courts and administrative panels have examined whether Dodd-Frank clarifies or alters section 806 of SOX. *Leshinsky v. Telvent GIT, S.A.*, --- F. Supp. 2d ---, 2012 WL 2686111, at **8-17 (S.D.N.Y. Jul. 9, 2012) (*Leshinksy*); *Ashmore v. CGI Grp. Inc.*, 2012 WL 2148899, at *4 (S.D.N.Y. Jun. 12, 2012) (*Ashmore*); *Johnson v. Siemens Bldg. Techs. Inc.*, 2011 WL 1431986, at **7-16 (Dept. of Labor Mar. 31, 2011) (*Johnson*). Each of these decisions concluded that Dodd-Frank merely clarified section

13

806 of SOX.[2]

In *Johnson*, the administrative review board (ARB) began by noting that the text of Dodd-Frank did not include a statement that Dodd-Frank was intended to clarify section 806 of SOX. *Johnson*, 2011 WL 1431986 at *7. The ARB observed, however, that the Senate Report accompanying Dodd-Frank included clarification language. Nevertheless, the ARB gave little weight to the report because Congress did not state its intent in the text of the statute. *Id.* (citing S. Rep. 111-176, at 114); *see also Leshinsky*, 2012 WL 2686111, at * 9 (refusing to rely on Senate Report because clarification language was not included in the text of the statute).

The ARB then discussed the pre-Dodd-Frank interpretation of section 806. *Johnson*, 2011 WL 1431986, at **9-10. The ARB described "significant conflicts" in case law interpreting section 806's coverage of subsidiaries. *Id.* at *9-10 (collecting cases). The ARB concluded, in light of the pre-Dodd-Frank conflict regarding the application of SOX to privately held subsidiaries, that Dodd-Frank was intended to clarify SOX rather than substantively change it. *Id.* at *11; *see also Leshinksy*, --- F. Supp. 2d ---, 2012 WL 268611, at **10-13 (collecting cases and reaching same conclusion).

Finally, the ARB examined whether Dodd-Frank was a reasonable interpretation of section 806 of SOX. *Id.* at **11-15. The ARB examined the legislative history of

---

[2] The court in *Ashmore* merely adopts the reasoning of the decision in *Johnson*. *Ashmore*, 2012 WL 2148899, at *4 (noting that the decision in *Johnson* was well-reasoned). The court in *Leshinsky* sets forth its reasoning, but that reasoning varies only minimally from the reasoning set forth in *Johnson*. *Leshinsky*, --- F. Supp. 2d ---, 2012 WL 268611, at **8-17.

14

SOX, the legislative purpose of SOX, and the filing requirements of the Securities Exchange Act of 1934 to conclude that "construing Section 806 to include subsidiaries is a reasonable interpretation" of SOX. *Id.*; *see also Leshinksy*, --- F. Supp. 2d ---, 2012 WL 268611, at \*\*14-17 (reaching same conclusion).

The reasoning set forth in *Johnson* and *Leshinsky*, however, is not particularly persuasive. Both decisions omit important lines of analysis in reaching their decisions. As the ARB noted, the text of Dodd-Frank contains no express language identifying the act as a clarification of SOX, and the statement in the Senate Report is of little weight. Therefore, the first factor set forth in *Middleton* does not suggest that Dodd-Frank clarifies section 806 of SOX.

*Johnson* and *Leshinksy* both purport to find great conflict in pre-Dodd-Frank interpretations of section 806. However, the reasoning of *Johnson* and *Leshinksy* in reaching that conclusion is not sound. *Middleton* instructs courts to examine whether the statute is ambiguous or whether there is a conflict in interpreting statutory language. *Middleton*, 578 F.3d 663-64. Neither *Johnson* nor *Leshinksy* interprets that actual language of the statute or discuss why they conclude section 806's plain language is ambiguous. The failure to consider, or even recognize, the plain language of section 806 is a major flaw in the reasoning of *Johnson* and *Leshinsky*. Indeed, it seems clear that the starting point for any discussion of whether an amendment clarifies or alters preexisting law must begin with an analysis of the text of the preexisting statute. *Johnson* and *Leshinsky* skip this step, like a batter failing to touch first base on the way to a double.

Second, while both *Johnson* and *Leshinksy* report that ALJs and federal courts are

15

split on the question of whether section 806 extends its protection to employees of privately held subsidiaries, both decisions overstate the actual conflict. A majority of decisions of ALJs and federal courts have reached the conclusion that section 806 of SOX did not protect employees of privately held subsidiaries. *Hein*, 2010 WL 5313526, at *4 (collecting cases); *Malin*, 638 F. Supp. 2d at 501 (collecting cases); *Rao*, 2007 WL 1424220 (collecting cases). Further, even where ALJs determined that section 806 extends its protection to employees of subsidiaries, they have found that section 806 extends protection where the subsidiary and parent were an "integrated enterprise," the subsidiary and parent are a "single employer," or where the subsidiary was merely an agent of the parent company. *See Johnson*, 2011 WL 1431986, at **9-11 (describing ALJ decisions that have reached the conclusion that section 806 protects employees of subsidiaries). Finally, *Johnson* and *Leshinsky* gloss over the fact that the ARB never discussed whether a privately held subsidiary would be covered under SOX. *See Leshinksy*, --- F. Supp. 2d ---, 2012 WL 2686111, at **11 n.10 (observing that the ARB did not reach the issue in *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, 2006 WL 3246904 (Dept. of Labor May 31, 2006).

Given that the language of the statute is plain and that the vast majority of ALJs and federal courts that have reached the issue have concluded that section 806 did not extend protection to employees of privately held subsidiaries, absent circumstances not present here, the Court concludes that, despite the reasoning in *Johnson*, there was not substantial conflict prior to Dodd-Frank regarding whether section 806 of SOX protected employees of privately held subsidiaries.

16

Turning to the final factor to be considered when determining whether an amendment alters or clarifies a preexisting law, the Court again finds the reasoning set forth in *Johnson* and *Leshinsky* to be unpersuasive. As the court in *Lawson* observed, the plain language of section 806 is not ambiguous, and courts are bound by what Congress has written. *Lawson*, 670 F.3d at 83. However, in determining that Dodd-Frank was a reasonable interpretation of section 806 of SOX, neither *Johnson* nor *Leshinsky* referred to the plain language of the statute. *Johnson*, 2011 WL 1431986, at **11-16; *Leshinsky*, --- F. Supp. 2d ---, 2012 WL, 268611, at ** 14-16. Instead, both decisions proceed immediately to the legislative history and purpose of the statute. *Johnson*, 2011 WL 1431986, at **11-16; *Leshinsky*, --- F. Supp. 2d ---, 2012 WL, 268611, at ** 14-16. Of course, it is well-settled that the starting point for statutory interpretation is the plain language of the statute itself. *Kovacs*, 614 F.3d at 673; *Pittway Corp. v. United States*, 102 F.3d 932, 934 (7th Cir. 1996) ("[a]ll statutory interpretation begins with the language of the statute itself, and where the statute's language is plain, the sole function of the courts is to enforce it according to its terms."). *Johnson's* and *Leshinksy's* failure to mention, let alone analyze, the plain language of the statute and to ignore entirely the well-settled rules of statutory interpretation severely undermines the reasoning of their decisions. The conclusion that Dodd-Frank is not inconsistent with section 806 of SOX cannot be reached without disregarding the plain language of section 806.

The Court concludes that Dodd-Frank alters, rather than clarifies, section 806 of SOX. Accordingly, the Court must apply the principle of anti-retroactivity set forth in *Landgraf*. *Landgraf* instructs that where Congress has expressly prescribed a statute's

17

proper reach, that prescription controls a court's analysis as to whether the new statute has a retroactive effect. *Landgraf*, 511 U.S. at 280. Dodd-Frank unequivocally sets forth its effective date, noting that that the amendments are to "take effect 1 day after enactment." Dodd-Frank Wall Street Reform & Consumer Protection Act, Pub. L. No. 111-203 (Jul. 21, 2010) (§ 4); *Blackwell v. Bank of Am. Corp.*, 2012 WL 1229673, at \*\* 3-4 (D.S.Ct. 2012) (holding that other provisions of Dodd-Frank do not have retroactive effect); *Mejia v. EMC Mortg. Corp.*, 2012 WL 367364, at\*5 n.4 (C.D. Cal. 2012) (same).

Consequently, the Court holds that Dodd-Frank does not have retroactive effect. Because Dodd-Frank does not have retroactive effect, Mart's underlying claims against both Forest River and Berkshire were without merit: he was an employee of Forest River, a privately held company, and not an employee of Berkshire. Therefore, Mart was not a covered employee under section 806 of SOX. Because Mart's underlying SOX claims lacked merit, he cannot demonstrate that he was damaged by GDAF's failure to timely file those claims, and his legal malpractice claim fails as a matter of law.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) [25] is granted. The Defendant's earlier filed Motion to Dismiss the Complaint [20] was made moot by Mart's filing of an Amended Complaint and is denied as moot.

Date: __November 16, 2012__  
_____  
JOHN W. DARRAH  
United States District Court Judge